HEARING BEFORE THE
UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

DOCKET NO. 2432

IN RE: NEUROGRAFIX ('360) PATENT LITIGATION

TRANSCRIPT OF PROCEEDINGS

At a hearing in the above-styled action held on March 21, 2013, at the United States Courthouse Annex Courtroom No. 15B 333 West Broadway, San Diego, California.

PANEL MEMBERS:

JUDGE VRATIL, Chairperson
JUDGE BREYER
JUDGE RENDELL
JUDGE FURGESON
JUDGE KAPLAN
JUDGE BARBADORO

REPORTED BY: SHERI L. SOMERS, CSR
Contract Court Reporter

APPEARANCES

MICHAEL A. MOLANO, ESQ.
Mayer Brown LLP
Palo Alto, California
Representing Philips Electronics
North America Corporation, et al.

JULES L. KABAT, ESQ.
Russ August & Kabat
Los Angeles, California
Representing NeuroGrafix; NeuroGraphy
Institute Medical Associates, Inc.; and
Image-Based SurgiCenter Corporation

JUDGE VRATIL: We'll call Docket No. 2432, In Re: NeuroGrafix ('360) Patent Litigation.

Mr. Molano?

MR. MOLANO: Good morning. Michael Molano on behalf of Philips with the Palo Alto office of Mayer Brown. I believe this is the third intellectual property case this morning. We are the second patent case before this Panel this morning. Unlike this morning's patent case, which was ATM related, this is MRI patent related. So this is a technology relating to hospitals and universities across the country. Ten cases are pending against many very well-respected and well-known universities across the country for their MRI machines.

If you've been to the hospital and you've been in an MRI machine, they probably come in three flavors. It's probably either a G.E. machine, Siemens machine or Philips machine. There has been suits against all of them. G.E. and Philip suits -- G.E. and Siemens suits have been settled, and those happened before Judge Pfaelzer in Central District of California.

We are now in the midst of ten other patent cases with the same products, Philips products, across six different judges across this country with about 30

defendants, many of them -- Columbia University, University of Chicago, the Harvard entities, University of California was sued and has already settled. These are all prominent universities and hospitals that have been sued.

I'd like to talk about two quick points, which is efficiency and why Judge Pfaelzer in Central District of California. I think I've heard from Judge Breyer this morning that there's a patent case which requires claim construction of the same patent, same products, you have the same plaintiff. All those common issues of fact exist across all these cases. One can imagine the inconsistent claim construction rulings from six different judges. They all go up to the federal circuit should this not be centralized.

JUDGE BARBADORO: What do you say to the concern that a Court of Claims case isn't subject to 1407 centralization?

MR. MOLANO: That issue has never been decided by this Panel. 1976 was the one comment -- the case that both parties briefed that has raised the issue --

JUDGE BARBADORO: Based on language of the provision, let's say, how do we fit a Court of Claims case into that statutory language?

MR. MOLANO: Your Honor, I think it's a federal

action, No. 1. I understand it's a district court action in the statute, but it's a federal action, and most importantly, in the --

JUDGE BARBADORO: What do we do with that? We've got the actual reference to district court. How do we construe that, in your view, to encompass the Court of Claims?

MR. MOLANO: We construe it in the way it was construed in 1976 by this Panel, which said if the court of federal claims is willing to cooperate with this Panel and allow the centralization, then there's no reason the issue should be decided. That's how it was decided, the case in 1976, by this Panel.

The U.S. has already not submitted any opposition and no response to -- and was noticed to this MDL panel, and by rule, you're acquiescing by not submitting a response. That's the rule by the MDL Panel. So they are willing to cooperate under the guise of not responding --

JUDGE BARBADORO: Aren't they taking the position, even though it's somewhat -- that there's really no jurisdiction over them? We can't transfer it and there's also -- isn't there a jurisdiction motion in front of the Court of Claims trying to get out on that basis?

MR. MOLANO: Yes. There's a motion to dismiss currently pending on that basis, but I'm speculating. I don't know why they didn't submit. They could have submitted a one-page opposition and just stated that.

JUDGE BARBADORO: If we weren't persuaded by the argument that we could include the Court of Claims, would it not be possible to centralize and coordinate the Court of Claims. So we leave the Court of Claims case there and coordinate centralizing the other actions?

MR. MOLANO: You can absolutely do that. It would be a real shame because it's the same Philips products, same patent, and now you've got two judges that will be construing the same patent.

JUDGE FURGESON: And yet the problem is we're looking at a statute that seems to exclude the Court of Claims, and that is plain language.

MR. MOLANO: It's interesting, does a district court -- and it's a difficult issue because they are noticed and they are part of the MDL filing system where they have been noticed and have received everything. But that's correct. It is an uncharted territory.

But I'd ask this court to consider changing that law. There's no reason why a Court of Claims

cannot -- who's been noticed on this MDL panel -- by this MDL Panel and could have raised an opposition, and obviously didn't, should not be included because it's federal court.

JUDGE FURGESON: Well, except we're looking at a statute that seems pretty clear on its face, and we really don't get to write on a blank slate here.

MR. MOLANO: Understood, Your Honor. Quickly, if I may -- I see I'm out of time -- Judge Pfaelzer does not have a currently pending action before her, but she has lived with this patent for 35 months. No judge has lived with it -- she's lived through it with two claim construction hearings, has done two claim construction orders, went to MSJ on invalidity and on non-infringement in two different cases. So here you have a judge who knows this patent, MRI technology, which is close to rocket science, and has lived with it for a long, long time.

JUDGE VRATIL: You've got one more minute for rebuttal. So thank you.

MR. MOLANO: Thank you.

JUDGE VRATIL: Mr. Kabat?

MR. KABAT: May it please the Court. I'm Jules Kabat of Russ August & Kabat. Functionally there are only two cases, each involving a hardware and software

provider, the BrainLAB case pending in the Northern District of Illinois and the Philips case pending in the District of Massachusetts. All of the other cases are customer cases that have been or will be stayed by court order or agreement of the parties. The remaining cases, the federal case, which is a Philips customer case, in part, and as is indicated, I believe, simply this Panel does not have jurisdiction over it.

The resolution of the two real cases, the two provider cases, in turn, should resolve the underlying customer cases. Judge Darrah handling the BrainLAB case in the Northern District of Illinois has proposed that he handle pretrial claim construction for the two case -- for all of those cases.

In answer to an earlier question this morning, that was not my calling his clerk. That was a statement by him in open court in a status conference. Plaintiffs have no objection and would stipulate that he could do is and would also stipulate that he could do so for pretrial and validity issues, and plaintiffs would also stipulate for Judge Stearns in the District of Massachusetts.

It is important to recognize the claim construction's evolving process. It continues through to and during trial, and there is no pending cases in

the Central District of California. There simply isn't. And, hence, claim construction would not be handled by a judge who would have a case to be tried before him or her.

JUDGE BREYER: As counsel points out, he has been years with this patent.

MR. KABAT: Judge Pfaelzer handled claim construction as to the parties that were before her. She has not at all --

JUDGE BREYER: I understand. Will the claim construction be -- not the outcome, but the -- are we talking about different patents in this case?

MR. KABAT: Different software, different uses, different ways of infringing, different claims asking to be constructed because of that, either by plaintiffs or by BrainLAB or --

JUDGE BREYER: All the claims will be different -- would all the claims be different and be construed in a Markman hearing?

MR. KABAT: I'm sorry, Your Honor?

JUDGE BREYER: Would they all be different, the terms be different?

MR. KABAT: They would not all be different. There could be in each because of the difference between how BrainLAB does what it does and Philips does

what it does. There could be different claims at issue. Not all of them would be, but there would be overlap. That would be for sure.

JUDGE FURGESON: Could I ask -- let me make sure I understand your argument. Are you saying that Judge Darrah -- the parties have agreed that Judge Darrah could do the claim construction that would involve Judge Kennelly's case and Judge Stearns case? Everybody says we're going to let Judge Darrah do the claim construction and Judge Kennelly and Judge Stearns can piggyback on top of his work?

MR. KABAT: No. What I said is that he volunteered and that is perfectly acceptable to plaintiffs, both for claims construction and also for pretrial and validity issues. It would be for the other side to agree.

JUDGE FURGESON: But we don't know, for example, if Judge Stearns or Judge Kennelly agree with that.

MR. KABAT: No, we do not.

JUDGE BARBADORO: The parties can't dictate that and the judge cannot just acquiesce and say I'll accept what they've done --

MR. KABAT: Of course not, Your Honor. The point I'm making is that the plaintiffs are not being obstinate and plaintiffs are cooperating. We

cooperated also for discovery. And in my experience at least, judges likewise cooperate to resolve things. This simply isn't an MDL situation, numerous cases and thousands of parties, that lawyers and a handful of judges can't wrap their hands around.

JUDGE FURGESON: Can I tell you -- and I'll just maybe give you a little insight here -- judges are really reluctant to farm out decisions like that because it's their case, it's their appeal, it's their reversal. They at least want to have something to say about how things go. It just is the way sometimes it happens. So maybe Judge Kennelly and Judge Stearns, great judges, would be willing to farm out that particular operation, but if we're going to farm it out, it almost makes more sense to farm it out to Judge Pfaelzer who really is, in her own words, worked very hard to work on that stuff.

MR. KABAT: And my answer to that would be segueing to the next issue, which is the forum shopping here, which is Judge Stearns rejected Philips' request to transfer to Judge Pfaelzer and Judge Pfaelzer requested Philips' request to intervene.

Should the Panel feel that an MDL is appropriate, it should go either to Judge Darrah before whom much -- which are the cases that are the first

evolved. All infringement and validity contentions have been exchanged and responded to. Or to Judge Stearns where Philips and the others are headquartered.

Thank you, Your Honor.

JUDGE VRATIL: Thank you. We have one minute of rebuttal.

JUDGE FURGESON: What about the idea that Judge Darrah -- sorry to jump right in here, but what about the idea of using Judge Darrah to handle all these pretrial matters for Judge Kennelly or Judge Stearns? What do you think about that idea?

MR. MOLANO: Your Honor, I think there's a concern that Judge Darrah has one case, where our second choice, which would be Judge Stearns, has five cases. Judge Stearns has 20 out of the 30ish defendants. Judge Darrah has three. Most of the defendants are in Boston. So if Judge Pfaelzer, who we think experience is No. 1, and if Judge Pfaelzer, if this Panel feels his experience is not enough, then the location of the defendants should be No. 2, which is Judge Stearns. And Judge Darrah just has one case.

JUDGE FURGESON: And there's not a problem with -- one counsel brought up -- is that claim construction can change at trial. Judge Pfaelzer doesn't have any of these cases. So she does the claim construction and

then it goes, say, back to Judge Darrah, and he's listening to the case and says, you know, Judge Pfaelzer didn't have the benefit of this information that I have now through a development of the trial. I'm going to change claims construction. So that can be a problem that you could look at.

MR. MOLANO: Your Honor, I would agree. And it's that same problem that would happen with Judge Darrah if Judge Darrah gets it and it goes to other judges. That, I think, you can run into with any centralization. I see I'm out of time. Thank you.

JUDGE VRATIL: Thank you very much. We'll take it under advisement.

* * * * *

STATE OF CALIFORNIA)
: ss.
COUNTY OF SAN DIEGO)

I, Sheri L. Somers, a Certified Shorthand Reporter, Certificate No. 9734, in the State of California, do hereby certify:

That the foregoing testimony and proceedings were taken before me at the time and place herein named; that said testimony and proceedings were reported by me in shorthand and then transcribed through computer-aided transcription, and the foregoing is a true record of the testimony and proceedings taken at that time.

I do further certify that I am a disinterested person and am in no way interested in the outcome of this action, or connected with or related to any of the parties in this action or their respective counsel.

IN WITNESS WHEREOF, I have hereunto set my hand on this _______ day of _____________, 20___.

__________________________
Sheri L. Somers
CSR No. 9734